## THE THEODORE FOSS.

### No. 6076–C.

District Court, S. D. California, Central Division.

May 27, 1935.

Clifton A. Hix, of San Pedro, Cal., for libelant.

Alex W. Davis, of Los Angeles, Cal., for respondent.

COSGRAVE, District Judge.

The agreed statement of facts on which the case was tried shows that the Theodore Foss is a motor vessel, owned at all times by respondent Foss Launch & Tug Company, of Tacoma, registered to such owner by certificate of registry recorded in the office of the Collector of Customs at Los Angeles Harbor. The certificate shows Los Angeles to be its home port.

On September 13, 1929, respondent made an executory contract by which it agreed to transfer title to the vessel to Halfhill Packing Corporation on completion of the installment payments of the purchase price by the latter. At that time the Halfhill Packing Corporation had possession of the vessel under a previous contract with respondent. The contract of sale of September 13, 1929, was recorded in the office of the Collector of Customs on October 3, thereafter; among other things, it provides that title to the vessel is retained by respondent, the owner, until full payment of the purchase price. It further provides that the purchaser, or the master, or the persons to whom the management of the vessel was intrusted should not have authority to purchase supplies or procure repairs on the credit of the vessel or charge the vessel with a lien therefor. Immediately before making the contract of sale respondent had ordered libelant, Craig Shipbuilding Company of Long Beach, to make certain repairs on the vessel for respondent's account. This cost was charged to respondent by libelant and promptly paid.

In the correspondence relative to this account libelant was advised that respondent was closing a deal for the sale of the vessel to the Halfhill people. Later libelant was advised by respondent that deal with the Halfhill people had been closed. On June 14, 1930, claimant expressly advised libelant that it had sold the boat to the Halfhill people and the latter were responsible for its expenses.

On June 4, 1930, Halfhill Packing Corporation, having had possession of the vessel since the previous September under its contract of sale, incurred indebtedness to libelant for repairs to the extent of $100; the next item was incurred on June 30, 1930, and on September 3, 1931, thereafter, a total expense of $1,419.62 had been incurred. Respondent in its correspondence with libelant claimed its manager had been in libelant's office in June, 1931, and was there informed that the account was charged against the Halfhill Company, and, as they did not pay, the libelant expected to lose the amount of the account. Libelant does not deny this statement.

Respondent, on January 15, 1932, repossessed the vessel for default in the installment payments and soon thereafter engaged libelant to make further repairs to the vessel, payment for which was prompt-

570

ly made. On April 26, 1932, libelant for the first time claimed liability against respondent and the Theodore Foss.

That in brief is the history of this transaction. It may fairly be said that when the expenses were incurred libelant did not look to respondent nor to the vessel for payment, but to the Halfhill Packing Corporation only. Although libelant did not have actual knowledge of the terms of the contract of purchase, it did have actual knowledge that respondent had paid promptly all charges incurred by it immediately before the making of the contract of sale and after repossession of the vessel; that a contract of sale was contemplated and that one had been made.

By the provisions of 46 USC § 972 (46 USCA § 972), the managing owner, ship's husband, master, or any person to whom the vessel at the port of supply is intrusted is presumed to have authority from the owner to procure repairs. Assuming that the Halfhill Packing Corporation and its master come within the description of those having such presumptive authority, the situation is further controlled by the provisions of section 973 following: "But nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs * * * was without authority to bind the vessel therefor." 46 USC § 973 (46 USCA § 973).

It is clear that even assuming that libelant did not have actual knowledge of the restrictive clause in the contract of sale, it did have knowledge that some contract was in existence. Its terms were open to libelant's inquiry. This inquiry libelant failed to make. Had it exercised reasonable or any diligence it could have ascertained the terms of agreement of sale. With actual knowledge that an agreement existed inquiry would have developed the fact that it had been recorded and its contents therefore were constructively known to libelant. U. S. v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361, is decisive of the rights of the parties here. Judgment is therefore ordered for respondent.

Proctor for respondent will present findings with exception reserved to libelant.